IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAETELL M. BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO.   14 CV 27 |
| vs. ) | |
| ) | JUDGE SHADUR |
| THOMAS J. DART, in his official capacity ) | |
| as Cook County Sheriff; COOK COUNTY ) | |
| CORRECTIONAL SGT. KOLNICKI; COOK ) | |
| COUNTY CORRECTIONAL OFFICER T. ) | |
| CRAWFORD, STAR NO. 9178; COOK ) | |
| COUNTY CORRECTIONAL OFFICER ) | |
| SERVANT, STAR NO. 9979; COOK COUNTY ) | JURY DEMAND |
| CORRECTIONAL OFFICER MARTINEZ, ) | |
| STAR NO. 8973; SUNITA WILLIAMSON, ) | |
| M.D.; ANDREW DE FUNIAK, M.D.; MONINA ) | |
| MERCADO JUDE, RN;NORMA AMAYA, RN; ) | |
| COLETTE CONNOLLY, APN, BAZA, PCA; ) | |
| UNKNOWN CERMACK HEALTH CARE ) | |
| PROVIDERS, COOK COUNTY d/b/a ) | |
| CERMAK HEALTH   SERVICES; ) | |
| ) | |
| Defendants. ) | |

## SECOND AMENDED COMPLAINT AT LAW

NOW COMES, RAETELL M. BUCHANAN, by and through his attorneys, JEFFREY J. NESLUND, LAW OFFICES OF JEFFREY J. NESLUND and ROBERT ROBERTSON, LAW OFFICES OF ROBERT ROBERTSON, and in complaining of the Defendants, THOMAS J. DART, in his official capacity as Cook County Sheriff; CORRECTIONAL SGT. KOLNICKI; COOK COUNTY CORRECTIONAL OFFICER T. CRAWFORD, STAR NO. 9178; COOK COUNTY CORRECTIONAL OFFICER SERVANT, STAR NO. 9979; COOK COUNTY CORRECTIONAL OFFICER MARTINEZ, STAR NO. 8973; SUNITA WILLIAMSON, M.D.; ANDREW DE FUNIAK, M.D.; MONINA MERCADO JUDE, RN; NORMA AMAYA, RN;

COLETTE CONNOLLY, APN, PCA BAZA, UNKNOWN CERMACK HEALTHCARE PROVIDERS and COOK COUNTY d/b/a CERMAK HEALTH SERVICES ("CERMAK"), states as follows:

## INTRODUCTION

1. This is a civil complaint brought under 42 U.S.C. § 1983, 42 U.S.C. §§ 12101, 12132 of the Americans with Disabilities Act of 1990 ("ADA"); 29 U.S.C. § 701 et seq. of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 USC § 794(a), and Illinois common law.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the Illinois common law claim pursuant to 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391 (b) because all parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred in this judicial district.

4. Plaintiff, RAETELL BUCHANAN, is a resident of the Northern District of Illinois.

5. Defendants, SUNITA WILLIAMSON, M.D.; ANDREW DE FUNIAK, M.D.; MONINA MERCADO JUDE, RN; NORMA AMAYA, RN; COLETTE CONNOLLY, APN BAZA, PCA, and certain UNKNOWN CERMACK HEALTHCARE PROVIDERS were at all times relevant hereto, employees of CERMAK HEALTH SERVICES, a division of Cook County Government who were medical care providers and were responsible for the care, custody and welfare of the Plaintiff while he was detained in the Cook County Department of Corrections.

6. Defendant, COOK COUNTY d/b/a CERMAK HEALTH SERVICES ("CERMAK"), was at all times relevant hereto, an entity of Cook County Government, and was responsible for the medical screening, medical treatment, and overall medical care of inmates in the

Cook County Department of Corrections, including Raetell Buchanan.

7. Defendants, THOMAS J. DART, in his official capacity as Cook County Sheriff; COOK COUNTY; CORRECTIONAL SGT. KOLNICKI; COOK COUNTY CORRECTIONAL OFFICER T. CRAWFORD, STAR NO. 9178; COOK COUNTY CORRECTIONAL OFFICER SERVANT, STAR NO. 9979; COOK COUNTY CORRECTIONAL OFFICER MARTINEZ, STAR NO. 8973; were at all times relevant hereto, employees of COOK COUNTY DEPARTMENT OF CORRECTIONS, the SHERIFF OF COOK COUNTY, a division of Cook County Government who were Correctional Officers in the Cook County Department of Corrections, and were responsible for the supervision, custody, and welfare of the Plaintiff while he was detained in the Cook County Department of Corrections.

## FACTUAL SUMMARY

8. Plaintiff was a pre-trial detainee at Cook County Department of Corrections ("CCDOC") from March 30, 2013 through March 23, 2015.

9. Prior to entering the CCDOC, Plaintiff suffered from paralysis and was confined to a wheelchair. Plaintiff was receiving treatment for decubitus ulcers, commonly referred to as pressure sores, on both of his legs. As of March 27, 2013, three days before entering the CCDOC, the open wound in Plaintiff's left lateral calf measured 12.3 centimeters in length and 4.0 centimeters in width. Plaintiff also had a smaller decubitus ulcer in his right upper calf measuring 3.4 centimeters in length and 1.2 centimeters in width.

10. When Plaintiff entered the Cook County Department of Corrections, it was obvious that he had a disability as he was confined to a wheelchair.

11. In 2008, Defendant Cook County had received actual notice that the CCDOC systematically violated the federal Constitutional rights of inmates. On July 17, 2008, United

States Attorney's Office for the Northern District of Illinois issued a 98 page report ("DOJ Report") to Todd H. Stroger, Cook County Board President, and Thomas Dart, Cook County Sheriff, regarding a 17 month investigation conducted by the Civil Rights Division of the United States Department of Justice. The investigation uncovered a systematic failure on part of employees of the Cook County Department of Corrections, and Cermak Health Services, to provide adequate medical care to inmates.

12. With respect to paraplegic inmates at the CCDOC, the DOJ Report stated that it had found "patterns of egregious failures of care regarding wound care" that were "gross deviations from generally accepted correctional medical standards."

13. Upon information and belief, DEFENDANT DART became aware in 2011 as a result of a case captioned *Phipps v. Sheriff of Cook County*, 07-cv-3899, that County employees in charge of determining housing assignments for wheelchair bound detainees did *not* consider whether a particular housing assignment provided a reasonable accommodation for the detainees' disability.

14. DEFENDANT DART has allowed the discrimination of handicapped inmates to continue within the CCDOC as well as the "pattern of egregious failures of care regarding wound care" for paraplegic detainees identified in the 2008 DOJ Report.

15. On March 30, 2013, Plaintiff was assigned to the CCDOC's Division 8 Medical Unit, Cermak Health Services, otherwise known as "CERMACK."

16. In accordance with the official policies of DEFENDANT DART, health care providers at CERMACK made the final decision regarding where Plaintiff would be detained within Division 8. These policies vested the Cermak health care providers with a power to decide

whether a detainee would be assigned to a handicap accessible housing unit or to a non-handicapped accessible housing unit.

17. Since entering CCDOC, Plaintiff has repeatedly been assigned to housing units known as "3 West" and/or "3 South." The units contained within these areas are not wheelchair accessible or in compliance with the Americans with Disabilities Act Guidelines ("ADAG") or the Uniform Federal Accessibility Standards ("UFAS") (Collectively referred to herein as the "Accessibility Guidelines" or "Guidelines").

18. On March 30, 2013, the Plaintiff underwent a Cermak Intake Health Screening by PA Martinez which documented that the Plaintiff had been confined to a wheelchair since 1994, suffered from kidney stones, "decubitus ulcers x 4" and a urinary tract infection. PA Martinez recommended that Plaintiff be evaluated at the emergency room at Cermak.

19. On March 30, 2013, at approximately 11:50 p.m., the Plaintiff was evaluated in the Cermak emergency room by DEFENDANT SUNITA WILLIAMSON, M.D.

20. The Plaintiff was discharged from the Cermak emergency room by DEFENDANT DR. WILLIAMSON on March 31, 2013 at approximately 1:40 a.m. and assigned to Living Unit 3-West, cell number 3217.

21. DEFENDANT MONINA MERCADO JUDE, RN prepared a Cermak Nursing Discharge For Admit form on March 31, 2013 at approximately 1:43 a.m. This Discharge For Admit form identifies the Plaintiff's diagnosis as paraplegia and assigns the Plaintiff to Living Unit 3-W (3-West).

22. The Plaintiff was assigned to Living Unit 3-West by DEFENDANT DR. WILLIAMSON and DEFENDANT JUDE, RN, despite the fact the cells in Living Unit 3-West are not handicap accessible or in compliance with the Accessibility Guidelines.

23. On March 31, 2013, Cermak Living Unit 3-West was supervised by DEFENDANT COOK COUNTY CORRECTIONAL SGT. KOLNICKI and DEFENDANT COOK COUNTY CORRECTIONAL OFFICER T. CRAWFORD, STAR NO. 9178 and SERVANT, STAR NO. 9979.

24. Cell number 3217 in Living Unit 3-West is not wheelchair accessible or in compliance with the Accessibility Guidelines. The toilet in Cell 3217 does not contain a side wall grab bar or a rear wall grab bar as required by the Accessibility Guidelines. Further, the Guidelines require that there be at least 60 inches of clear floor space surrounding the toilet; however, there is only 55¼ inches of clear floor space surrounding the toilet in Cell 3217. The Accessibility Guidelines require that the centerline of the toilet only be 18 inches from the side wall, whereas the toilet in Cell 3217 is approximately 23 inches away from the side wall. The Guidelines additionally require that the toilet rim be 17 inches to 19 inches off the ground, whereas the toilet rim in question is 16½ inches off the ground. Additionally, the Guidelines require 30 inches by 48 inches of unobstructed clear floor space at the sink for a forward approach by a wheelchair, whereas the sink in Cell 3217 has no clear floor space as it is obstructed by the toilet bowl. Finally, the Guidelines require 30 inches of knee space below the sink, whereas the sink in room 3217 has no knee space below the sink as the toilet bowl obstructs a forward approach by a wheelchair.

25. On March 31, 2013, cell number 3217 in 3-West did not have a proper bed or mattress for the Plaintiff when he was assigned to the cell.

26. DEFENDANT OFFICERS CRAWFORD, SERVANT and SGT. KOLNICKI ordered the Plaintiff to sleep on the floor on the hard plastic device referred to as a "boat," which is shaped like a bed on the floor of the cell, despite the fact the Plaintiff was a paraplegic with

multiple documented decubitus ulcers and suffered from kidney stones and a urinary tract infection.

27. On March 31, 2013, at approximately 2:36 a.m., the Plaintiff was transferred from Cermak Living Unit 3-West to Cermak Living Unit 3-South and assigned to cell number 3133. Living Unit 3-South in an Isolation Unit and is not wheel chair accessible or in compliance with the Accessibility Guidelines. The showers contained within Living Unit 3-South are not wheelchair accessible or in compliance with the Accessibility Guidelines.

28. On March 31, 2013, Living Unit 3-South was supervised by DEFENDANT SGT. KOLNICKI and DEFENDANT COOK COUNTY CORRECTIONAL OFFICER MARTINEZ, STAR No. 8973.

29. Cell number 3133 in Living Unit 3-South did not have a proper bed or air mattress for the Plaintiff.

30. DEFENDANTS SGT. KOLNICKI and OFFICER MARTINEZ ordered the Plaintiff to sleep on the hard plastic "boat" on the floor of cell number 3133, despite the fact the Plaintiff was a paraplegic with multiple documented decubitus ulcers and suffered from kidney stones and a urinary tract infection.

31. On April 1, 2013, at approximately 4:35 p.m., Plaintiff was transferred from Living Unit 3-South back to Living Unit 3-West and placed in cell number 3217, despite the fact the cell was not wheelchair accessible or in compliance with the Accessibility Guidelines.

32. On April 1, 2013, DEFENDANT DR. DE FUNIAK ordered daily dressing changes for Plaintiff's decubitus ulcers.

33. On April 9, 2013, Plaintiff was again examined by DEFENDANT DR. DE FUNIAK and DEFENDANT NORMA AMAYA, RN. DEFENDANT AMAYA noted that the

Plaintiff had "multiple decubs to buttock" and patient noted "wounds to bilateral legs, wet to dry dressing will be applied as doctor ordered."

34. On April 15, 2013, Plaintiff was transferred from cell number 3217 to cell number 3215 in Living Unit 3-West. Cell number 3215 was not wheelchair accessible or in compliance with Accessibility Guidelines.

35. Plaintiff remained assigned to cell number 3215 in Living Unit 3-West from April 15, 2013 until his release from the CCDOC on March 23, 2015.

36. Throughout the duration of his confinement, DEFENDANT DR. DE FUNIAK was the primary physician responsible for Plaintiff's overall care and treatment at CERMACK.

37. DEFENDANT COLETTE CONNOLLY, APN, was the wound care nurse who was responsible for developing and monitoring the wound care plan to treat the Plaintiff's decubitus ulcers.

38. Throughout the duration of his confinement, Plaintiff did not receive daily dressing changes to address his decubitus ulcers.

39. Throughout the duration of his confinement, Plaintiff was often denied an air mattress as well as proper medication and dressings to treat his pressure sores. Plaintiff failed to receive the correct hydrofiber wound dressing, Aquacel, for over one year into his confinement.

40. As a result of the conditions of his confinement and deliberate indifference to his serious medical conditions, the Plaintiff developed pressure wounds on his chest and buttock. The Plaintiff's pre-existing pressure sores became worse and he developed a cronic and severe bone infection.

41. The deliberate indifference by the DEFENDANT health care providers at Cermak resulted in expansion of Plaintiff's pre-existing pressure sores. On November 19, 2013,

DEFENDANT DR. DE FUNIAK documented the ulcer on Plaintiff's left leg measured 15 centimeters long and 5 centimeters wide and on the right leg the pressure sore measured 10.0 centimeters in length and 5.0 centimeters wide. The size of the pressure ulcer on Plaintiff's right leg *tripled in size* since his admission to CERMACK, where he was purportedly receiving daily medical attention.

42. As a result of the cronic bone infection and size of the decubitus ulcers, surgical consultants at Stroger Hospital recommended the amputation of *both* of Plaintiff's legs.

43. The shower rooms at Cermak Health Services are also not readily accessible to and useable by people with disabilities. For example, the height of the shower nozzle, shower control, soap shelf, and soap dispenser in shower room 3204 are all above the maximum height allowed by the Guidelines at the time of March 30, 2013. Specifically the Guidelines require that the shower nozzle be a maximum of 48 inches high, whereas the shower nozzles in question are 71 inches high. The Guidelines further require that the shower controls by no higher than 48 inches, whereas the shower controls in question are 63 inches high. The Guidelines also require that the soap shelf be no more than 54 inches high, whereas the soap shelves in question are 57½ inches high. Finally, the Guidelines require that the soap dispensers be no more than 54 inches high, whereas the soap dispensers in question are 55½ inches and 56 inches high.

44. Throughout the duration of his confinement, Plaintiff was also assigned to overcrowded cells, with five or six wheelchair-bound detainees forced to live in a cell designed for four (4) inmates.

45. As a result of the foregoing, Plaintiff has suffered physical injuries at CCDOC and Cermak while trying to maneuver his body from the wheelchair to a non-handicapped accessible toilet, including October 21, 2013 and July 18, 2014. Plaintiff also has fallen on

several occasions while trying to maneuver his body from the wheelchair to the non-handicap accessible bed.

46. On January 3, 2015, Plaintiff also suffered physical injuries when he fell from a shower chair when DEFENDANT PCA BAZA failed to assist Plaintiff. Plaintiff subsequently suffered a fractured femur to his right leg. UNKNOWN CERMACK HEALTHCARE PROVIDERS failed to properly diagnose or treat the Plaintiff's fracture fractured leg for two days.

47. Throughout his confinement, Plaintiff complained about the conditions of confinement, made several requests to be transferred, and filed numerous grievances about his care and treatment in CERMACK.

## COUNT I
**(Disability Discrimination in Violation of the Americans with Disabilities Act)**

48. Plaintiff re-alleges and incorporates paragraphs 1-47 above as fully stated herein.

49. Plaintiff is a qualified individual with a disability as a result of an accident that left him confined to a wheelchair and unable to walk.

50. Defendants discriminated against Plaintiff because of his disability by: refusing to assign Plaintiff to a handicap accessible room; denying Plaintiff access to handicap accessible shower facilities; denying Plaintiff access to handicap accessible toilet facilities; denying Plaintiff access to handicap accessible bed stand by refusing to accommodate Plaintiff disability.

51. Defendants Cook County, Cook County Sheriff's Office, and Cook County Department of Corrections were deliberately indifferent to or intentionally discriminated against Plaintiff because of his disabilities.

## COUNT II
### (Deprivation of Rights in Violation of 42 U.S.C. § 1983)

52. Plaintiff re-alleges and incorporates paragraphs 1-45 above as fully stated herein.

53. DEFENDANT DART, acting in his official and individual capacity, knew that wheelchair bound detainees at CCDOC were routinely denied reasonable accommodations and assignments to handicap accessible facilities by County employees, including the above named individual DEFENDANTS, yet allowed this practice to continue within the CCDOC.

54. As a result of the foregoing, Plaintiff has been deprived of his Eighth Amendment right as secured through the Fourteenth Amendment of the United States Constitutional.

55. Plaintiff has been harmed as a result of the discrimination against him.

## COUNT III
### (Violation of Civil Rights –Sunita Williamson, M.D.; Andrew De Funiak, M.D.; Monina Mercado Jude, RN; Norma Amaya, RN; Colette Connolly, APN, Unknown Cermack Healthcare Providers, Baza, PCA)

56. Plaintiff re-alleges and incorporates paragraphs 1-45 above as fully stated herein.

57. The failure to properly document, monitor and/or treat the Plaintiff's serious medical conditions constituted deliberate indifference on the part of Defendants.

58. The failure of the Defendants to properly monitor, document and/or treat Plaintiff's pressure sores proximately caused his serious medical condition to become worse and caused Plaintiff great humiliation, as well as emotional and physical pain and suffering.

59. As a direct and proximate result of the wrongful conduct of the individual Defendant CERMAK medical care providers as set forth herein, Plaintiff was deprived of rights, privileges and immunities secured to him by the Eighth and Fourteenth Amendments to the United States Constitution.

## COUNT IV
### (Violation of Civil Rights – Cook County d/b/a Cermak Health Services)

60. Plaintiff re-alleges and incorporates paragraphs 1-47 above as fully stated herein.

61. CERMAK HEALTH SERVICES is a department of Cook County and is the principal source of heath care to inmates at the Cook County Department of Corrections.

62. Cook County, through the Executive Director of Cermak Health Services, has the responsibility and duty to develop policies and procedures affecting inmates' access to health care services at the CCDOC.

63. At all times relevant hereto, there was in place in the CERMAK HEALTH SERVICES policies and/ or procedures under which inmates with serious medical conditions, such as the Plaintiff, were routinely denied access to proper or sufficient medication and/or medical care, which was manifest in the frequent refusal of employees of Cermak Health Services to provide adequate medication or medical care to inmates, whom they knew to have serious medical conditions,

64. Plaintiff alleges that, on and before March 30, 2013, there was in place in the CERMAK HEALTH SERVICES a custom under which Cermak Health Service Employees routinely placed wheel-chair-bound detainees, such as the Plaintiff, in over crowed cells that did not conform to "Accessibility Guidelines;" ignored detainees' requests for medicine and/or medical treatment for serious a medical conditions, and failed or refused to monitor or chart wound care and/or administer medications and/or air mattresses prescribed for inmates.

65. Plaintiff alleges that, at all times relevant hereto, there was in effect in the CERMAK HEALTH SERVICES, a policy which fosters amongst the health service employees who work in the CCDOC for CERMAK HEALTH SERVICES, a pervasive attitude of deliberate indifference to the plight of detainees who suffer from serious medical conditions, or who

develop serious medical conditions while incarcerated.

66. Despite having received notice of the systemic and pervasive deficiencies in the wound care afforded paraplegic inmates at the CCDOC the authorities responsible for the operation, policies and procedures of the CCDOC and Cermak Health Services failed or refused to implement any changes to correct any of the deficiencies identified by the Department of Justice or which have been alleged in lawsuits.

67. As a direct and proximate cause of the wrongful policies and procedures of CERMAK, the Plaintiff was grossly inadequately cared for while in custody in the CCDOC and suffered great bodily harm.

68. As a direct and proximate result of the wrongful policies and procedures in effect in the COOK COUNTY d/b/a CERMAK HEALTH SERVICES, as set forth herein, Plaintiff was deprived of rights, privileges and immunities secured to him by the Eighth and Fourteenth Amendments to the United States Constitution.

### COUNT V
**(Violation of Civil Rights – Cook County Department Of Corrections Sgt. Kolnicki; Cook County Correctional Officer T. Crawford; Cook County Correctional Officer Servant; Cook County Correctional Officer Martinez)**

69. Plaintiff re-alleges and incorporates paragraphs 1-47 above as fully stated herein.

70. Defendants COOK COUNTY DEPARTMENT OF CORRECTIONS ("CCDOC") SGT. KOLNICKI; OFFICER CRAWFORD STAR #9178; OFFICER SERVANT, STAR #9979; OFFICER MARTINEZ, STAR # 8973 ignored Plaintiff's serious medical conditions and instead forced Plaintiff into over crowed cells without proper beds and/or air mattresses. Defendants individually and together were deliberately in different to Plaintiff's obvious and serious medical condition.

71. As a direct and proximate result of the abuse of DEFENDANTS COOK COUNTY

DEPARTMENT OF CORRECTIONS OFFICERS, as set forth herein, Plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

## COUNT V

### (Intentional Infliction of Severe Emotional Distress – PCA BAZA)

72. Plaintiff re-alleges and incorporates paragraphs 1-47 above as fully stated herein.

73. On or about January 3, 2015, the Plaintiff had a bowel movement and requested the assistance of DEFENDANT PCA BAZA.

74. Due to his disability, the Plaintiff could not reach his backside to clean himself up while seated in the shower chair.

75. DEFENDANT PCA BAZA refused to assist Plaintiff in cleaning himself, telling the Plaintiff "it was not her job" as she left in the shower room in living unit 3 -West.

76. The Plaintiff subsequently fell from the shower chair and fractured his right leg.

77. UNKNOWN CERMACK HEALTHCARE PROVIDERS failed to properly diagnose or treat the Plaintiff's fracture fractured leg for two days.

78. The failure of DEFENDANT PCA BAZA to assist the Plaintiff and UNKNOWN CERMACK HEALTHCARE providers to diagnose or treat the Plaintiff's serious medical condition constituted deliberate indifference on the part of Defendants, and was willful and wanton in its disregard for Plaintiff's obvious and prolonged suffering.

79. DEFENDANT PCA BAZA and UNKNOWN CERMACK HEALTHCARE providers are employees and/or agents of Cook County, and the wrongful conduct herein described was committed by each of them within the scope of their respective employment

duties, as employees and/or agents of Cook County. By virtue of the fact that the Defendants' conduct was willful and wanton and was committed within the scope of their employment, Defendant Cook County is liable under the doctrine of *Respondeat Superior.*

80. The acts and conduct of DEFENDANTS as set forth above were extreme and outrageous. DEFENDANTS intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.

81. DEFENDANTS' actions and conduct did directly and proximately cause severe emotional distress to Plaintiff and thereby constituted intentional infliction of emotional distress.

82. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

## REQUEST FOR RELIEF

83. Plaintiff, RAETELL BUCHANAN, respectfully requests that the Court:

   a. Enter a judgment in his favor and against Defendants;

   b. Award compensatory damages against Defendants;

   c. Award attorney's fees against Defendants;

   d. Award punitive damages against individualDefendants; and

   e. Grant any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, RAETELL BUCHANAN, demands a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Jeffrey J. Neslund
JEFFREY J. NESLUND
One of Plaintiff's Attorneys

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
20 North Wacker Drive, Suite 3710
Chicago, IL 60606
(312) 223-1100

Robert Robertson
Law Offices of Robert Robertson
20 N. Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 223-8600